No. 12-31155

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN RE: DEEPWATER HORIZON

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., DOING BUSINESS AS GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

*Plaintiffs – Appellees*

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION; BP PIPELINE COMPANY,

*Defendants – Appellees*

v.

GULF ORGANIZED FISHERIES IN SOLIDARITY & HOPE, INCORPORATED,

*Movant – Appellant*

On Appeal from the U.S. District Court for the Eastern District of Louisiana
C.A. Nos. 2:10-md-2179, and 2:12-cv-970

## ORIGINAL BRIEF OF APPELLANT,
## GULF ORGANIZED FISHERIES IN SOLIDARITY & HOPE, INCORPORATED

Joel Waltzer
WALTZER WIYGUL & GARSIDE, LLC
3715 Westbank Expressway, Ste 13
Harvey, LA  70058
(504) 340-6300

Clay Garside
WALTZER WIYGUL & GARSIDE, LLC
14399 Chef Menteur Hwy, Ste D
New Orleans, LA 70129
(504) 254-4400

*Counsel for Movant/Appellant Gulf Organized Fisheries In Solidarity & Hope, Inc.*

February 20, 2013

No. 12-31155

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN RE: DEEPWATER HORIZON

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., DOING BUSINESS AS GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

Plaintiffs – Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION; BP PIPELINE COMPANY,

Defendants – Appellees

v.

GULF ORGANIZED FISHERIES IN SOLIDARITY & HOPE, INCORPORATED,

Movant – Appellant

On Appeal from the U.S. District Court for the Eastern District of Louisiana
C.A. Nos. 2:10-md-2179-CJB-SS, and 2:12-cv-970-CJB-SS

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Movant – Appellant**

Gulf Organized Fisheries in Solidarity & Hope, Inc.

Gulf Organized Fisheries in Solidarity & Hope, Inc. (GO FISH) is a nonprofit coalition of leading Gulf seafood industry groups. GO FISH does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. Its voting members are: Louisiana Shrimp Association; Louisiana Bayoukeeper; Southeast Asian Fisherfolk Association; Association of Family Fishermen; Louisiana Oysterman Association; Pointe-Au-Chien Indian Tribe; and United Commercial Fishermen's Association. The nonvoting partner members are: Catholic Charities Archdiocese of New Orleans; Greater New Orleans Disaster Recovery Partnership; and Mary Queen of Viet Nam Community Development Corporation. The commercial fishermen who are members number in the thousands, each with an interest in the outcome of the litigation.

Attorneys for Movant - Appellant:

Joel Waltzer
WALTZER WIYGUL & GARSIDE, LLC
3715 Westbank Expressway, Ste 13
Harvey, LA 70058
Telephone: (504) 340-6300
Fax: (504) 340-6330

Clay Garside
WALTZER WIYGUL & GARSIDE, LLC
14399 Chef Menteur Highway, Ste D
New Orleans, LA 70129
Telephone (504) 254-4400
Fax: (504) 254-1112

**Plaintiffs – Appellees:**

The *Bon Secour* action is brought by fifteen class representatives: Bon Secour Fisheries, Inc.; Fort Morgan Realty, Inc.; LFBP # 1, LLC d/b/a GW FINS; Panama City Beach Dolphin Tours & More, LLC; Zeke's Charter Fleet, LLC; William Sellers; Kathleen Irwin; Ronald Lundy; Corliss Gallo; Lake Eugenie Land & Development, Inc.; Henry Hutto; Brad Friloux; Jerry J. Kee; John Tesvich; and Michael Guidry. The class representatives purport to represent the Economic and Property Damages settlement class certified by the District Court on December 21, 2012. Absent class members comprise a "large group of persons [who] can be specified by a generic description, [such that] individual listing is not necessary." 5th Cir. R. 28.2.1. The generic descriptions can be found in the class definition of the Amended Class Action Complaint. [USCA5 at 3389-3395.]

Attorneys for Plaintiffs - Appellees:

Stephen Jay Herman
Soren E. Gisleson
HERMAN HERMAN & KATZ LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
Fax: (504) 561-6024

Elizabeth Joan Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Fax: (415) 956-1008

James Parkerson Roy
DOMENGEAUX, WRIGHT, ROY &
EDWARDS
556 Jefferson Street, Suite 500
Lafayette, LA 70501
Telephone: (337) 233-3033
Fax: (337) 233-2796

Samuel Issacharoff
NEW YORK UNIVERSITY SCHOOL OF
LAW
40 Washington Square, S., Suite 411J
New York, NY 10012
Telephone: (212) 998-6580
Fax: (212) 995-4590

**Defendants - Appellees:**

BP Exploration & Production Inc.; BP America Production Company; BP p.l.c.

Attorneys for Defendants - Appellees:

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Fax: (202) 879-5200

Jeffrey Lennard
SNR DENTON US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone: (312) 876-8000
Fax: (312) 876-7934

Don K. Haycraft
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Fax: (504) 556-4108

/s/ Joel Waltzer
Joel Waltzer
WALTZER WIYGUL & GARSIDE, LLC
3715 Westbank Expressway, Ste 13
Harvey, LA  70058
(504) 340-6300

*Attorney of Record for Movant -
Appellant Gulf Organized Fisheries
In Solidarity & Hope, Inc.*

## REQUEST FOR ORAL ARGUMENT

This appeal concerns the denial of a commercial fishing industry organization's right to intervene on behalf of its underlying members in the *Deepwater Horizon* matter. In short, the district court misconstrued the relief sought through intervention and misapplied the legal standard for associational standing. Although this appeal involves familiar principles of law regarding associational standing and intervention, the underlying case is a complicated multidistrict litigation involving a complicated class action settlement, a 2.3 billion dollar capped settlement fund that fishermen and property owners must compete for amongst themselves, and, ultimately, the future and survival of the Gulf commercial fishing industry in the face of injury and uncertainty caused by the *Deepwater Horizon* oil spill. This Court will likely have questions regarding any and all of these matters that may not be adequately addressed in the briefs. Gulf Organized Fisheries in Solidarity & Hope, Inc. requests oral argument to ensure that the Court fully understands the issues informing its Motion to Intervene and the relief it requested below.

# TABLE OF CONTENTS

Certificate of Interested Persons --------------------------------------- ii

Request for Oral Argument ----------------------------------------- vi

Table of Contents ----------------------------------------------- vii

Index of Authorities -------------------------------------------- viii

Statement of Jurisdiction --------------------------------------- 1

Statement of Issues --------------------------------------------- 2

Statement of the Case ------------------------------------------- 3

Summary of Argument -------------------------------------------- 12

Argument and Authorities --------------------------------------- 14

    A. GO FISH Has Standing To Represent Its Membership ----------- 16

        1. Standard of Review and Background Law ----------------- 16

        2. Case Law Regarding *Hunt's* Third Prong for
          Associational Standing --------------------------------- 18

        3. Application of the Law to GO FISH's Motion to Intervene -- 23

    B. GO FISH Has A Right To Intervene ------------------------- 26

        1. Background Law --------------------------------------- 26

        2. GO FISH Satisfies the Standards of Rule 42(a) ----------- 28

    C. Conclusion ----------------------------------------------- 33

Prayer ----------------------------------------------------------- 33

Certificate of Service --------------------------------------------- 35

Certificate of Compliance ------------------------------------------ 36

# INDEX OF AUTHORITIES
## CASES

*Assoc'n of Amer. Physicians & Surgeons, Inc. v. Texas Medical Bd.*,
    627 F.3d 547, 550 (5th Cir. 2010) -------------------------- ##

*Berkeley Electric Coop. v. Mt. Pleasant*,
    302 S.C. 186, 191, 394 S.E.2d. 712, 715 (1990) ----------------- ##

*Edwards v. City of Houston*,
    78 F.3d 983, 992 (5th Cir. 1996) (en banc) --------------------- ##

*Federal Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
    983 F.2d 211, 216 (11th Cir. 1993) --------------------------- ##

*Feltzen v. Andreas*,
    134 F.3d 873, 874 (7th Cir. 1998), cert. granted in part,
    141 L. Ed. 2d 789, 119 S. Ct. 29 (1998) ---------------------- ##

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*,
    528 U.S. 167, 185 (2000) ---------------------------------- ##

*Hunt v. Washington State Apple Adver. Comm'n*,
    432 U.S. 333, 97 S.Ct. 2434 (1977) -------------------------- ##

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392, 1397 (9th Cir. 1995) --------------------------- ##

*In re Discovery Zone Securities Litig.*,
    181 F.R.D. 582 (ED Ill 1998) -------------------------------- ##

*International Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock*,
    477 U.S. 274 (1986) --------------------------------------- ##

*Lake Investors Dev. Group v. Egidi Dev. Group*,
    715 F.2d 1256, 1258 (7th Cir. 1983) -------------------------- ##

*NAACP v. Button*,
    371 U.S. 415 (1963) --------------------------------------- ##

*Pennsylvania Psychiatric Society v. Green Spring Health Services*,
    280 F.3d 278, 285-87 (3rd Cir. 2002) - - - - - - - - - - - - - - - - - - - - - - - - - ##

*Reich v. ABC/York-Estes Corp.,*
    64 F.3d 316, 321 (7th Cir. 1995) - - - - - - - - - - - - - - - - - - - - - - - - - - - ##

*Ruiz v. Estelle,* 161 F.3d 814, 828 (5th Cir. 1998) - - - - - - - - - - - - - - - - - - - - - ##

*Sierra Club v. Espy,* 18 F.3d 1202 (5th Cir.1994) - - - - - - - - - - - - - - - - - - - - ##

*Sierra Club v. Robertson*,
    960 F.2d 83, 86 (8th Cir. 1992) - - - - - - - - - - - - - - - - - - - - - - - - - - - - ##

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528, 92 S.Ct. 630 (1972) - - - - - - - - - - - - - - - - - - - - - - - - - - ##

*United Food and Commercial Worker's Union Local 751 v. Brown Group, Inc.,*
    517 U.S. 544 (1996) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ##

*Warth v. Seldin*,
    422 U.S. 490, 515 (1975) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ##

## STATUTES

United States Constitution, Article III, Section 2 - - - - - - - - - - - - - - - - - - - - - ##

46 U.S.C. § 30101 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ##

33 U.S.C. § 2717 (b) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ##

## TREATISES

Federal Class Action Practice Manual, § 45 - - - - - - - - - - - - - - - - - - - - - - - ##

## STATEMENT OF JURISDICTION

This case is part of a multidistrict litigation arising from a massive discharge of oil from a vessel in U.S. waters. Subject-matter jurisdiction in the U.S. District Court for the Eastern District of Louisiana was appropriate pursuant to Article III, Section 2 of the United States Constitution, empowering the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction," the Admiralty Extension Act, 46 U.S.C. § 30101, and the Oil Pollution Act, 33 U.S.C. § 2717 (b) ("OPA").

Gulf Organized Fisheries In Solidarity & Hope, Inc. (GO FISH) appeals from an order denying its motion to intervene as a matter of right pursuant to Federal Rules of Civil Procedure, Rule 24(a).  The denial of a motion to intervene as a matter of right is a final order vesting jurisdiction in this Court pursuant to 28 U.S.C. § 1291. *See Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc).

The order affirming the denial of GO FISH's Motion to Intervene was filed on October 25, 2012. [USCA5 at 8343-8344.] GO FISH's Notice of Appeal was filed on November 12, 2012, within the time allowed by Federal Rules of Appellate Procedure, Rule 4. [USCA5 at 8363.]

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

ISSUE 1:     Whether the district court misapplied the third prong of the test for associational standing of *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 97 S.Ct. 2434 (1977) in finding that the relief requested by GO FISH required the participation of individual members who were directly affected by the BP spill.

ISSUE 2:     Whether GO FISH meets the requirements for intervention under Federal Rules of Civil Procedure, Rule 24.

### Notice of Intent Not to Waive An Issue Not Briefed

GO FISH is aware of Appellee BP's Motion to Consolidate the above-captioned case with Case No. 13-30095, which concerns multiple appeals of the certification of the settlement class and granting final approval of the class settlement agreement. [Rec. Doc. 00512141324.]  In support of that motion, BP notes that GO FISH's right to appeal the interlocutory order denying GO FISH's request to conduct limited discovery is preserved in its appeal of the final judgment regarding class certification. [*Id*. at 4.] GO FISH will respond within the time allowed, but it bears note here that GO FISH agrees that arguments regarding the interlocutory discovery order are properly raised in the appeal of the final judgment. Therefore, GO FISH does not herein raise the impropriety of the order denying its discovery. However, GO FISH wants to make clear that it does not waive the issue by failing to brief it in this appeal of the denial of intervention.

# STATEMENT OF THE CASE

## RELEVANT FACTS

On April 20, 2010, an explosion and fire aboard the *Deepwater Horizon* drilling rig triggered a massive oil spill with far reaching environmental and economic impacts, particularly to commercial fisheries.  Subsequently, a coalition of established Gulf Coast commercial fishing industry trade groups[1] formed Gulf Organized Fisheries in Solidarity & Hope, Inc. ("GO FISH") to collectively and more effectively address issues faced by fishermen as a result of the spill.  One such issue is the adequacy of compensation paid for the wholesale release of commercial fishing economic and punitive damage claims.  Should the compensation prove insufficient to replace past and future fishing losses, entire fishing industries and communities may well fail.  Such would cause irreparable injury to the mission and membership rolls of GO FISH members.

Recently, BP and the Plaintiff Steering Committee ("PSC") unveiled their Economic and Property Damages Class Settlement Agreement.  GO FISH discussed the Settlement with over one thousand commercial fishermen and then

---

[1] GO FISH's Board of Directors includes leadership from the Louisiana Shrimp Association, the Louisiana Oysterman Association, Louisiana BayouKeeper, the Southeastern Asian Fisherfolk Association, the Association of Family Fishermen, the Pointe-Au-Chien Indian Tribe and the United Commercial Fishermen's Association.  Partner Members of the coalition include the Catholic Charities Archdiocese of New Orleans, the Greater New Orleans Disaster Recovery Partnership and the Mary Queen of Vietnam Community Development Corporation.

voted to intervene in the Settlement proceeding. [USCA5 at 7111.] The Court's

denial of GO FISH's intervention on grounds of standing gives rise to this appeal.

The Class Settlement Agreement's "Seafood Compensation Program"

("SCP") applies to the majority of GO FISH's membership. The Seafood

Compensation Program provides for compensation of commercial fishing lost

catch claims and certain types of property damage claims. The SCP is the only

capped portion of the Settlement Agreement. Formulas for allocating this fixed

fund were stated to have been created by court-appointed neutrals working with

partially known information provided by partially known stakeholders.[2]

The formulas essentially divided the SCP claimants into subclasses that are

internally consistent, but with widely varying results. Of particular importance to

GO FISH is the fact that the estimates of distributions of funds from the Seafood

Compensation Program repeatedly published by the parties grossly overstate the

portion of the Fund that will go to pay commercial harvester revenue based claims

(by an estimated $500,000,000). The unpaid portion of the Seafood Fund, which

GO FISH believes will be at least one billion dollars, will be subject to a second

round of distributions. Having experienced the negotiations among competing

claimant groups that led to the initial lopsided allocations, the need for an open

---

[2] "Partially known" refers to GO FISH and the public at large. Presumably the neutrals and class counsel know what information was considered and who submitted it. GO FISH's request to conduct limited discovery into this information was denied in the same ruling that denied intervention.

process for determining the "Round Two" distribution was the immediate concern that prompted GO FISH's Motion to Intervene.

As the certification process and terms of the Seafood Compensation Program have evolved, GO FISH coalesced as the dissenting voice of disaffected commercial harvesters in terms of the Seafood Compensation Program's overall fairness of process and result. GO FISH intervened to request specific prospective relief (not damages) and class certification discovery – to illuminate the systemic concerns held by its commercial harvester members.

Despite its members' participation in disasters past, specialized knowledge, and long established representational roles, the district court denied GO FISH's intervention on the grounds that it lacked representational standing to challenge the adequacy of class counsel and representatives, and implicitly, to object to the overall fairness of the Class Settlement Agreement.

Clearly, the effect of the denial is to eliminate the dissent. BP and the PSC will no doubt argue that this Court should not consider GO FISH's objections to certification and the fairness of the Class Settlement Agreement on the basis of the ruling made subject of this appeal. Yet even before the district court or this Court considered the fairness of the settlement and continuing now, thousands of commercial fishermen are signing individual releases under the terms of the Class Settlement Agreement, an arrangement class counsel calls "unique". With GO

FISH's membership denied the ability to make interim claims and forced to sign releases before obtaining needed compensation for admitted losses, the association is the best and strongest voice to advocate for change on their behalf.

PROCEDURAL HISTORY

The complex events relevant to this cause developed on several parallel tracks:  the closure of the fisheries; the oil spill response; BP's OPA claims process; and the multi-district litigation from which this appeal arises.  GO FISH was involved in all of these concurrent tracks, but, necessarily, the following procedural history focuses on the course of the multidistrict litigation made subject of this appeal.

While GO FISH member organizations were advocating for work and aid for their economically displaced commercial fisher members, plaintiff lawyers across the country were filing hundreds of class actions and individual lawsuits seeking damages and other relief.  On August 10, 2010, the Judicial Panel on Multidistrict Litigation centralized the complaints for damages and injunctive relief (excluding securities suits) in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1407. [USCA5 at 889-908.]  A Limitation of Liability action filed in the Southern District of Texas by the owners of the *Deepwater Horizon* (the "Transocean" entities) was also transferred to the Eastern District of Louisiana and consolidated with the MDL. [USCA5 at 16-17; 2:10-md-2179, Rec. Doc. 62.]

In the fall of 2010, the district court appointed a Steering Committee and Liaisons to manage the litigation. The trial of the issues of limitation and liability was tentatively scheduled to commence in October 2011, but was continued to February 27, 2012. [USCA5 at 54; 2:10-md-2179, Rec. Doc. 473.] On February 26, 2012, the Court adjourned proceedings for one week, at the parties' request, to enable further progress on settlement talks. [USCA5 at 631; Rec. Doc. 5887.] On March 2, 2012, the Court was informed that the parties had reached an "agreement-in-principle" on a proposed settlement of private party economic and property damage claims of an as yet unspecified class of claimants. [USCA5 at 1716.] The Court adjourned the trial scheduled for March 5, 2012, because of the potential for realignment of the parties and changes to the trial plan. [*Id.*] On March 8, 2012, before the details of the settlement were finalized, the court entered an order creating a Court Supervised Settlement Program. [USCA5 at 641; 2:10-md-2179, Rec. Doc. 5995.] That same day, the court appointed John W. Perry as a "court designated neutral" to preside over the completion of the capped "seafood component" of the proposed settlement. [USCA5 at 1717.]

On April 16, 2012, the Plaintiffs' Steering Committee (PSC) filed a class action complaint to serve as the vehicle for the proposed Economic and Property Damages Settlement. [USCA5 at 671; 2:10-md-2179, Rec. Doc. 6252.] On April 18, 2012, the PSC and BP filed a joint motion for Preliminary Approval and Class

Certification [USCA5 at 1718-2134] as well as the proposed Economic Settlement [USCA5 at 2130-3156], totaling 1,438 pages. The hearing for preliminary approval of certification of the class and the settlement was set for seven days later on April 25, 2012. [USAC5 at 675; 2:10-md-2179, Rec. Doc. 6279.]

On April 25, 2012, GO FISH filed preliminary Comments and Objections to the proposed Settlement. [USCA5 at 3157-3172.] The district court held the hearing on preliminary approval on April 25, 2012. [USCA5 at 3173-3289, transcript.] Counsel for BP and the PSC, as the only parties to the class action, were the only parties allowed to speak, and the hearing was held "mainly to allow the parties to make a public presentation and explanation of the Settlement." [USCA5 at 3185.]

On April 30, 2012, the court appointed neutral, counsel for BP, and members of the PSC met with undersigned counsel for Go FISH to discuss GO FISH's preliminary objections to the Seafood Compensation Program. Subsequently, the settlement and class complaint were amended on May 2, 2012. [USCA5 at 3433-3636.] Several amendments to the capped Seafood Compensation Program addressed concerns raised by GO FISH that were applicable to all commercial fishermen putative class members. [USAC5 at 3590-3592.] The amended class complaint removed proposed class representatives listed in the original Complaint who were GO FISH members or who otherwise

objected to the original proposed Settlement. [USCA5 at 3290-3432.] That same day, on May 2, 2012, the district court granted preliminary approval of the proposed class and the proposed settlement. [USCA5 at 3637-3683.]

The approval order also established procedural deadlines. The district court ordered the Court Supervised Settlement Program to commence operations on June 4, 2012. [*Id.*] The *Deepwater Horizon* Settlement Program is unique in that it serves as a vehicle for securing individual releases of putative class member's claims before the issues of class certification or the fairness of the settlement are finally decided. [USCA5 at 3693-3694.] The district court gave BP and the PSC three and a half months to file the support for the Settlement Agreement, setting a deadline of August 13, 2012. [*Id.*] The deadline for filing Objections to the proposed Settlement Agreement was set for eighteen days later on August 31, 2012. [*Id.*] The Fairness Hearing for final approval of the proposed settlement was scheduled for November 8, 2012.

On August 13, 2012, BP and the PSC filed memoranda, affidavits, and other documentation in support of final approval of the Class Settlement, spanning some 1,457 pages. [USCA5 at 5036-6493.] Through the entire week of August 27 to August 31 and beyond, Hurricane Isaac caused disruption in south Louisiana, prompting the district court to extend the deadline for filing objections one week to September 7, 2012. [USCA5 at 6494.]

On September 7, 2012, GO FISH filed the Motion to Intervene that is the subject of the instant appeal. [USCA5 at 7101-7121.] On the same day, GO FISH also filed Objections [USCA5 Supp. at 607-665; 10-cv-7777, Rec. Doc. 226] and a Notice of Intent to Appear at the Fairness Hearing. [USCA5 at 7122.]

On September 11, 2012, the district court entered an Order Regarding Procedures for November 8 Fairness Hearing, including an allocation of times for oral presentations: an hour and a half for BP and the PSC to present and 3 minutes each for objectors. [USCA5 at 7442-7446.] The district court also admonished that "[w]hile any member of the public may attend, only parties with standing shall be permitted to speak or participate in the fairness hearing." [*Id.* at 7445.] Also on September 11, 2012, GO FISH filed a Motion for a Scheduling Order to Conduct Limited Discovery, related to the objections and motion for intervention that GO FISH had filed. [USCA5 at 7447-7453.] The district court, through the magistrate assigned to the case, ordered the PSC and BP to respond by noon on September 17 and order GO FISH to reply by September 18, 2012. [USCA5 at 7454.] In BP's opposition to discovery requests it challenged GO FISH's representative standing under the third prong of the *Hunt* test in a footnote. [USCA5 at 7473.] GO FISH filed a reply on September 18, 2012 advocating for limited discovery. [USCA5 at 7501-7513.] At this time, GO FISH's Motion to Intervene had not been opposed or set for hearing. Instead, the magistrate ordered that the Motion for a Scheduling

Order to Conduct Limited Discovery be denied by ruling that GO FISH lacks

standing to intervene and denying the Motion to Intervene. [USCA5 at 7514-7522.]

GO FISH objected to the magistrate's order. [USCA5 at 7550-7561.] The district

court judge affirmed the magistrate's order without discussion finding it "not

clearly erroneous or contrary to law." [USCA5 at 8343-8344.]  However, one week

later on November 1, 2012, the district court appointed the undersigned counsel for

GO FISH as "representative counsel" to argue GO FISH's objections to the

Seafood Compensation Program at the fairness hearing, allotting the argument the

most time of any objector, fifteen minutes. [USCA5 at 8345-8347.] On November

8, 2012, undersigned counsel for GO FISH argued GO FISH's objections at the

fairness hearing. [USCA5 at 8693; 8496-8512.] On November 12, 2012, GO FISH

appealed the denial of its Motion to Intervene as of right. [USCA5 at 8363.]

# SUMMARY OF ARGUMENT

GO FISH sought to intervene as a party in the settlement class action below in order to modify the class structure and the claim allocation procedures applicable to those class members captured by the limited fund of the Seafood Compensation Program. GO FISH also sought party status in order to conduct limited discovery into the support for the allocation formulae contained in the Seafood Compensation Program. GO FISH did not seek to intervene in order to recover compensation for any of its individual members.

The district court's finding that GO FISH sought individualized monetary awards for its members was contrary to the pleadings and was in fact erroneous. Consequently, the district court's legal conclusion that GO FISH lacks associational standing under the third prong of the *Hunt* test was wrong. The commercial fishing industry membership of GO FISH chose for good reasons to enter the litigation under the aegis of their association, and their right of association should be upheld.

Further, GO FISH has a right to intervene under FRCP Rule 42(a). GO FISH's motion for intervention was, and remains, timely. The relief it seeks is still available even within the class settlement as approved by the district court. GO FISH represents a large portion of the Gulf commercial seafood industry and its

member organizations have done so for decades. It has a strong interest in the fair treatment of its membership and in the continued survival of the fishing industry. The settlement as approved will inequitably divide a fixed sum among competing claimants within and without the commercial fishing industry without any advocates for those who receive the short shrift and without any process by which their best arguments can be advanced. This may well leave entire populations of small business owners (which is essentially what a fishing enterprise is) at risk of failure and poverty. As fishermen go broke or change vocations, GO FISH's membership ranks will diminish.

The parties to the agreement have contractually bound themselves to uphold the settlement and suppress dissent for the benefit of the class as a whole. GO FISH's interest is inadequately represented. Thus, GO FISH satisfies all the elements for intervention as of right under Rule 42(a).

The district court's order denying GO FISH leave to intervene as of right should be reversed.

# ARGUMENT AND AUTHORITIES

The  magistrate judge improperly denied GO FISH's motion for leave to intervene based on a misapplication of the third prong for associational standing set forth in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). No opposition was filed, nor was the intervention set for hearing as requested [USCA5 at 7116] and contemplated by F.R.C.P. Rule 72 and Pre-Trial Order No. 15 [*See* USCA5 at 74; 2:10-md-02179, Rec. Doc. 676].  Instead, BP made a brief reference to standing in its opposition to GO FISH's request for limited discovery regarding the proposed class and fairness of the proposed settlement agreement. [USCA5 at 7473.]

While recognizing that GO FISH's "founding members are non-profit fishing industry and community groups with members directly affected by the BP spill and the proposed settlement," the magistrate adopted BP's conclusory argument, finding: "The relief sought for the underlying members of the fishing industry groups which comprise GO FISH is individualized monetary damage awards. The claims and relief asserted by GO FISH require the participation of individual members of the GO FISH fishing industry groups in the lawsuit and therefore GO FISH lacks standing to proceed." [USCA5 at 7522.]  Denying GO FISH's motion to intervene ended the case for GO FISH and was therefore a recommendation for a dispositive order, and as such should have been reviewed de novo. However, the

district court affirmed the magistrate's finding by applying a deferential standard of review. [USCA5 at 8343-8344.]

Under any standard, the magistrate's finding that GO FISH is seeking individualized damage awards for its members is manifestly wrong. The Court's standing analysis is dependent upon the specific relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 185 (2000). As the magistrate's order points out, GO FISH sought but three items in its prayer for relief:  (a) amend the class definition to create a separate class for those claimants participating in the Seafood Compensation Program ("Program") and subclasses within the Program; (b) appoint counsel to represent each of the subclasses; and (c) appoint a special master to make findings on the competing claims of the subclasses which would be used to determine the second distribution under the Program. [USCA5 at 7521, 7120-7121.]  GO FISH sought a legal ruling amending the class definition and establishing procedural due process; it did not seek any monetary award for any of its members. Following intervention, GO FISH could have obtained judgment granting every request in its prayer without proof of any specific individual's damages because it was concerned with the class structure and the settlement process.  Certainly, GO FISH's individual members, and all other class members, would then make their individual claims for compensation within that structure and process, but those individual claims are distinct matters. If GO

FISH obtains the relief it requested, a better, more legitimate, class structure and procedure will be in place, which will permit those with claims to present them in a fair and equitable system.

## A.    GO FISH HAS STANDING TO REPRESENT ITS MEMBERSHIP.

### 1.  Standard of Review and Background Law

GO FISH moved to intervene as of right, and alternatively by permission. Intervention was denied based on a finding that GO FISH lacks standing. "A ruling denying intervention of right is reviewed de novo. Denial of permissive intervention, on the other hand, is reviewed for clear abuse of discretion." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)(citations omitted). "'[W]hen standing is challenged on the basis of the pleadings,' [the Court] must 'accept as true all material allegations of the complaint and ... construe the complaint in favor of the complaining party.'" *Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citation omitted).

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977) provides the familiar requirements for establishing associational standing. An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing under Article III to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither

the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* at 343.

Regarding the requirements of associational standing, which was the basis of the district court's denial of intervention, the Supreme Court has made clear that the third prong of the *Hunt* test is a prudential consideration for the courts, not a constitutional requirement. *International Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock*, 477 U.S. 274 (1986)(hereinafter *Brock*); *see also United Food and Commercial Worker's Union Local 751 v. Brown Group, Inc.* 517 U.S. 544, 557 (1996) ( "The third prong [of *Hunt*] is best seen as focusing on matters of administrative convenience and efficiency, not on elements of a case or controversy.")

In weighing whether it is prudent to allow an association to pursue damages claims on behalf of individual members, the Court in *Brock* laid out the significant value of associational standing:

> The Secretary's presentation, however, fails to recognize the special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions. While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre- existing reservoir of expertise and capital. "Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." These resources can assist both courts and plaintiffs. As one court observed of an association's role in pending litigation: "[T]he interest and expertise of

> this plaintiff, when exerted on behalf of its directly affected members, assure 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.' "
>
> In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. "The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all." The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests.

*Brock*, 477 U.S. at 289-290 (citation omitted).

The Supreme Court's discussion in *Brock* sets forth very well the benefits in terms of administrative efficiency and convenience, to the district court below, to this Court, and to the fishing membership, of GO FISH's participation in this litigation. Indeed, the district court implicitly recognized and availed itself of these benefits when it appointed GO FISH's counsel to argue objections on behalf of all Seafood Compensation Program claimants. Because GO FISH is not pursuing a damages claim on behalf of any of its members, its participation offers all of the benefits of association and none of the concerns of individualized damage requirements.

### 2. Case Law Regarding *Hunt's* Third Prong for Associational Standing

The parties and the district court all concede that GO FISH's members would have standing to sue in their own right, and the relief GO FISH seeks is

germane to its purpose. The district court relied solely on the third prong of the *Hunt* test in rejecting GO FISH's standing to intervene on behalf of its members. In doing so, the magistrate misconstrued the claims and relief GO FISH actually seeks and instead assumes that because individual members of GO FISH may ultimately claim compensation through the settlement program, their individual intervention into the class action is required. The district court's factual assumption is incorrect, and its conclusion is contrary to the law.

As the first prong of the *Hunt* test makes clear, associational standing always hinges on injury to individual members. Such individual injury within the membership is a prerequisite, not a bar. Very often, the interest is monetary. *Hunt* itself involved a claim by a Washington State advertising commission that certain regulations in North Carolina would improperly cause damage and expense to its members. In ascertaining that the amount in controversy for individual growers was sufficient for federal jurisdiction, the Supreme Court notes in some detail that the individual members are suffering monetary damages because of the regulations. *Hunt*, 432 U.S. at 346-48. Associational standing was appropriate, however, because the association in *Hunt* was seeking to change the regulations causing damage to its members, not to recover those damages for them.

In fact, the attempt to redress injury to individual members is the norm in associational standing cases. "'(W)hether an association has standing to invoke the

court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.'" *Hunt*, 432 U.S. at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). GO FISH's request to amend certain class definitions and procedures is "a request for 'some other form of prospective relief'" and substantially the same as the relief sought in *Hunt*. If granted, that relief will hopefully inure to the benefit of GO FISH's members, and to the fishing industry at large. The fact that individual members of GO FISH have a financial interest in the outcome of the relief requested underpins GO FISH's right to intervene rather than undermines it.

*Hunt's* recognition that an association's underlying members may be enabled to seek individual relief in the future has been consistently followed. In *Brock, supra*, the Court clearly set forth the premise that the likelihood that members will make individual damages claims based on an association's legal action does run afoul of *Hunt's* third requirement. Just like the magistrate in this case, the court of appeals in *Brock* had denied associational standing to the UAW

"because those UAW members 'who had suffered an alleged injury had done so in varying amounts requiring individualized proof,' the relief sought here could not be obtained unless 'each individual claimant was a party plaintiff.'" *Brock*, 477 U.S. at 287 (quoting appellate decision below).

In reversing, the Supreme Court held: "the Court of Appeals misconstrued the nature of petitioners' claims. Neither these claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved UAW member. The suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's TRA eligibility provisions. And the relief requested, and granted by the District Court, leaves any questions regarding the eligibility of individual TRA claimants to the state authorities given jurisdiction over such questions by 19 U.S.C. § 2311(d)." *Id.* at 287-88 (citation omitted).

In the same way, GO FISH's claims and requested relief raise a question of law, whether represented subclasses and a sufficient procedure for advocating the best case of each subclass are necessary and beneficial in regards to the capped Seafood Compensation Fund. [*See,* USCA5 at 7103-7115, Memorandum In Support of GO FISH's Motion to Intervene; USCA5 Supp. at 607-665, GO FISH Objections.] Whether any individual member is eligible for compensation and the amount of that compensation, is left to the Court Supervised Settlement Program established by the Settlement Agreement.

This Court took up *Hunt*'s third prong in *Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627 F.3d 547 (5th Cir. 2010). The case concerned claims that the Texas Medical Board engaged in abusive practices that caused damage to physicians who were members of AAPS. Necessarily, the AAPS cited and relied upon stories of many individual instances of abusive practices and conduct to support its claim of systemic unconstitutional behavior. The district court dismissed the complaint based upon the third prong of *Hunt* because "AAPS's allegations about anonymous complaints, conflicts of interest, arbitrary administrative rulings, breaches of privacy, and retaliation cannot be sustained without the extensive participation of individual members and therefore render associational standing improper." *Id*. at 551. This Court reversed, finding that even though individual members would be required to participate in order to establish systemic violations, such participation could be accomplished with "a small but significant sample of physicians." *Id.* at 553.[3] "Because AAPS also seeks only equitable relief from these alleged violations, both the claims and relief appear to support judicially efficient management if associational standing is granted."

---

[3] *See also*, *Pennsylvania Psychiatric Society v. Green Spring Health Services*, 280 F.3d 278, 285-87 (3rd Cir. 2002)(reviewing cases in which associational standing was established even though participation by members would be required).

GO FISH's motion to intervene falls solidly within the reasoning of this Court's ruling in *AAPS*. Although certain factual predicates are necessary to inform the Court of the need and benefit of the relief requested – that is, creating subclasses and a process for the allocation of a capped fund among competing claimants – there is no need to resolve any individual's claim for compensation to reform the current conflicts and inadequacy in class representation.

### 3.     Application of the Law to GO FISH's Motion to Intervene

The widely recognized industry groups that form GO FISH have been serving the fishing community for decades. Legislative bodies and regulatory agencies rely on GO FISH member groups in times of disaster and involve them in almost all issues affecting their respective fisheries. GO FISH's member groups have resources and expertise that will "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions." *See Brock, infra*.  GO FISH also speaks to those excluded from the settlement by GCCF releases, the impacts of which are highly relevant to the impact on the industry as a whole. Finally, for reasons of resources and unity, GO FISH's member groups have decided to proceed together and are exercising constitutionally protected rights of association on critical matters of public importance. *See, e.g., NAACP v. Button*, 371 U.S. 415 (1963).

GO FISH seeks class wide relief of systemic problems with the proposed class certification as it relates to Seafood Compensation Program participants and seafood related industries. However, after acknowledging GO FISH's prayer for relief, the district court disregarded it and assumed that individual claimants must resolve their compensation claims as part of the relief requested. This was erroneous.

Class action litigation is fundamentally a representative standing vehicle, like associational litigation. If the law were as described in the magistrate's order, then neither GO FISH nor the Representative Parties named in the class action complaint would have standing to act on behalf of the class, each member of which must ultimately prove his, her, or its own eligibility and damages. However, that is not the stage of the proceedings class certification concerns. The district court certified the PSC/BP proposed class definitions and claim process without knowing the details of a single claimant's basis for recovery. The district court granted the relief requested in the class complaint, and not a single person recovered a dollar by that act alone. Creating the settlement class and the settlement process opened the door for individual class members to make their claims based on their own facts and support.

GO FISH seeks class wide relief in exactly the same manner as the class representatives. Even with the district court's involvement, the failure to create

subclasses within the capped Seafood Compensation Program is fatal to the
monumental proposed settlement of private damages claims. The creation of zero-
sum allocations behind closed doors with one and the same counsel representing
competing claimants is inherently flawed and contrary to binding precedent. [*See*
USCA5 Supp. at 607-665, GO FISH Objections.] GO FISH seeks to amend the
class structure and institute the procedural safeguards that are mandatory for this
class certification to stand. GO FISH seeks a different class structure and allocation
procedure that recognizes the adversity of the competing Seafood Compensation
Program claimants and allows for advocacy and a decisional record. GO FISH
seeks discovery to test the legitimacy of this settlement process, including the class
representatives and class counsel's representational standing.  GO FISH seeks to
assure the Class Settlement Agreement is free from collusion and fair, in part by
examining the factual support for the initial allocations created by the settlement.
GO FISH does not seek to intervene in order to recover damages or compensation
for any member.

GO FISH believes that the creation of a capped Seafood Compensation Fund
foments various competing interests that must be represented through Court-
approved subclass representative plaintiffs and counsel within the class action
vehicle already proposed. Eventually, if GO FISH obtains the relief it requests,
those representative plaintiffs and counsel will put forward the best case for each

subclass to inform the court-appointed neutrals' determination of the second distribution of Seafood Compensation Funds. Only then, after GO FISH's participation in intervention is fully resolved, will the details of individuals' claims be pertinent.

**B.     GO FISH HAS A RIGHT TO INTERVENE**

**1.  Background Law**

The standard for intervention as a matter of right is set forth in Fed. R. Civ. P. 24(a):

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus under Fed. R. Civ. Proc. 24(a)(2), an applicant must meet four requirements:  (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

"When considering a motion to intervene, the court 'must accept as true the non- conclusory allegations in the motion." *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995). In other words, the Court should not be concerned at this stage whether GO FISH's factual allegations will ultimately prove true or persuasive, but, assuming they are true, whether they support GO FISH's intervention. "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* (citing *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)). Generally, Rule 24 "is construed broadly in favor of the applicants [for intervention]." *E.g.*, *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Federal Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (any doubt concerning propriety of intervention should be resolved in favor of proposed intervenors); *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (same).

The Deepwater Horizon Economic and Property Damage Settlement directly impacts GO FISH's organizational purpose and its members. Given the stakes at issue and the difficulties that any individual or non-profit would face in challenging the massive array of resources supporting the settlement, GO FISH voted to intervene as an association. "Intervention is the appropriate

mechanism for nonparties to protect interests that may adversely be affected by a trial court's judgment. *In re Discovery Zone Securities Litig.*, 181 F.R.D. 582 (ED Ill 1998); *Feltzen v. Andreas*, 134 F.3d 873, 874 (7th Cir. 1998), cert. granted in part, 141 L. Ed. 2d 789, 119 S. Ct. 29 (1998)." Federal Class Action Practice Manual, § 45.

### 2.  GO FISH Satisfies the Standards of Rule 42(a).

### 1)  *GO FISH'S Motion to Intervene Was Timely.*

In *Sierra Club v. Espy,* 18 F.3d 1202 (5th Cir.1994), this Court set forth four factors by which to evaluate the timeliness of an intervention motion. They are: (1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances. *Id.* at 1205.

GO FISH filed the application for intervention on September 7, 2012, within four months of the filing of the Amended Complaint and four weeks after August 13, 2012, when proponents BP and the PSC first filed their voluminous, yet inadequate, support for the settlement, with a week-long, disruptive Tropical Storm Isaac in the interim.  August 13, 2012 was the earliest time that GO FISH could ascertain that discovery, and therefore intervention, would be necessary.

GO FISH moved to intervene and conduct limited discovery a full two months prior to the November 8, 2012 class action fairness hearing.

Further, as GO FISH's Motion to Intervene, Prayer for Relief, and Objections all make clear, GO FISH's intervention is concerned with the procedure for allocating the "Round Two" funds from the Seafood Compensation Plan. One of the amendments to the Seafood Compensation Program that resulted from GO FISH's preliminary Comments and Objections was the ability of the court-appointed neutral to distribute the Round Two funds in some manner more equitable than a straight pro rata distribution that would magnify the initial disparate results. [*See* USCA5 at 3591.] As of the date of this filing, there is still no procedure established for determining the "Round Two" allocations.

"[T]he "prejudice to existing parties" prong of the *Sierra Club* test measures prejudice caused by the intervenors' delay—not by the intervention itself." *Ruiz v. Estelle,* 161 F.3d 814, 828 (5th Cir. 1998). The parties to the class action will suffer no prejudice by the "delay" in intervening insofar as a procedure for the "Round Two" distribution determinations can still be created within the terms of the Class Settlement Agreement that has been approved. GO FISH's intervention is still timely for the relief it seeks.

The prejudice to GO FISH in denying intervention, and more starkly to its members, is great. First, the commercial fishermen chose to collectively address the Class Settlement Agreement, to present a unified front and to associate to achieve their political goals.  Many fishermen chose not to opt out relying on GO FISH's advocacy both in the court and with the court-appointed neutral.  If the intervention is denied, GO FISH will endure a constitutional harm to the exercise of the rights of association, access to the courts and free speech through litigation.

Filing an objection to the Class Certification and to the Settlement in reality requires legal training.  The Settlement alone requires weeks of study, with a record many thousands of pages long.  The time required to compile the industry data, dozens of reports each hundreds of pages, and to figure out what the Settlement actually pays requires months of time.  GO FISH presents the platform to pool resources, particularly legal resources.

Without GO FISH as a party, each individual is left to his or her own. And, most lawyers represent many claimants across multiple claim types and within several different fisheries. GO FISH provides a means of addressing the overarching issues.  Finding a lawyer to file objections on a case by case basis is not easy, is costly, and ethically challenging.

Affiants to the intervention and to the objections are themselves class members and leaders of their respective fisheries. The affiants objected to class certification and the fairness of the Settlement through GO FISH. BP and the PSC will no doubt argue that if GO FISH is denied intervention, this Court has no right to review the merits of GO FISH's well thought out objections. If they prevail, GO FISH affiants and the many fishermen they associated with will be subject to argument that they should lose their Objection without just consideration.

Finally, GO FISH provides cover for those who wish to dissent but are or may be intimidated from doing so, particularly claimants who are proceeding *pro se*. One need only read the transcript of the fairness hearing to discern that the exercise of dissent can expose the Objector to rough treatment. Claimant may fear being buried by paper, made subject of a smear campaign, or perhaps receiving bad treatment on their claim. Real or imagined, without GO FISH, their expression is likely suppressed.

### 2) GO FISH Has an Interest That Is Adversely Affected.

GO FISH is extremely concerned about the distribution of funds under the formulas in the class settlement. The distribution of funds is not correlated to the severity of impact to fishing grounds where claimants fished and the corresponding severity of risk for the future. Further, deckhands and fishermen

in certain fisheries gain little to no protection against the risk of future loss. [*See* USCA5 Supp. at 607-665, GO FISH Objections.]  Unless allocations are changed, the majority of the $2.3 billion fund will go to pay property damage claims, nearly $500,000,000 over the estimate provided by the PSC to the district court.[4] [USCA5 at 5107.]  This essential fact is ignored by the affiants and economists who vouch for the fairness of the plan in the exhibits attached to the parties' Memoranda in Support.

### 3) *GO FISH'S Interests Are Not Adequately Represented by the Parties.*

The burden on an applicant for intervention to show the inadequacy of representation "is minimal and the applicant need only show that the representation of his interests 'may be inadequate.'" *Berkeley Electric Coop. v. Mt. Pleasant*, 302 S.C. 186, 191, 394 S.E.2d. 712, 715 (1990) citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 92 S.Ct. 630 (1972). GO FISH's interests are not adequately represented in this matter by the existing parties, because GO FISH seeks changes to the Settlement Class structure and the default enforcement of the Seafood Compensation Program in the Class Settlement Agreement. The existing parties to the matter actively oppose GO FISH's

---

[4] GO FISH estimates that if the Seafood Compensation Program's "Round 2" distribution is paid in the same proportions as the first round distribution, anywhere from $1.2 billion dollars will go to pay property damage claims to oyster leaseholders and for the diminution in value of IFQ quotas, and not to compensate fishermen at all. The remaining $1 billion dollars will be the total amounts allocated to all Gulf Coast fishermen combined, including shrimp, oyster, crab, and finfish harvesters.

interests and are contractually bound to support the proposed settlement. [USCA5 at 3772.] The representative plaintiffs and the PSC are bound to advance the interests of the class as a whole, even if it is to the detriment of the commercial fishing community and GO FISH's membership. [USCA5 at 3773-3774.]

The Agreement in Principle promised significantly better returns for commercial fishermen than the Agreement as filed. The Agreement as filed and presented to the district court and the public [*See, e.g.,* USCA5 at 5107] promised significantly better returns for commercial fishermen than will actually be realized in the initial distributions from the settlement fund. The "fairness" *vel non* of the Seafood Compensation Program rests in part on facts not yet known or not yet revealed by the parties to the agreement and on the existence of procedural safeguards not yet in place.

Further, the future risk of significant sustained loss appears more likely today than at any time since the spill, particularly in light of 2012's fishing seasons. Fishermen indicate catch is moving in the wrong direction in the worst hit areas. Losses are migrating outward from highly contaminated basins to neighboring basins as a result of increased fishing pressure. Jobs are being lost and more competition is now evident for the remaining positions. These are GO FISH's allegations. They are to be taken as true in considering whether intervention is appropriate. BP presented voluminous information in support of

the notion that the Gulf has significantly recovered. However, countering information concerning the potential for future losses has not been presented by the PSC and class representatives. The presentation in support of the settlement was so one-sided that it led the United States of America to object even though it is not a member of the class settlement. [USCA5 at 7062-7100.] GO FISH's interests in the health of the Gulf and the commercial fishing industry are not adequately represented. GO FISH sought to intervene to lend its considerable expertise to the Court and to enable full discussion and resolution of these issues, which are not adequately presented by the existing parties.

GO FISH's mission and purpose is directly affected by the outcome of this Class Settlement Agreement.  GO FISH has a direct economic interest in terms of its membership rolls in assuring that any mass settlement of its members' valuable economic and punative damage claims provides sufficient protection to its members to survive the hard times created by BP and the other defendants.  GO FISH must be allowed to vet the qualifications of those who purport to represent the fishermen GO FISH members have themselves represented for decades.

## C.    CONCLUSION

GO FISH's member groups such as the Louisiana Shrimpers Association (LSA), the Louisiana Oysterman Association (LOA), and the United Commercial Fishermen's Association (UCFA) have for many years given voice to the concerns

of commercial fishermen and in fact have a long history of involvement as points of contact between governmental agencies and their constituents in times of declared disaster. Forewarned by the Alaskan Valdez experience, keenly aware of BP's use of resource as a tool of division and perhaps the separate fisheries own proclivity toward disunity, these organizations made a political choice to band together, to pool resources, and to collectively advocate for the protection of all commercial fishermen.

## PRAYER

For all the above reasons, Appellant, Gulf Organize Fisheries In Solidarity & Hope, Inc. (GO FISH), respectfully requests that Court to reverse the order of the trial court and grant GO FISH leave to intervene as of right in the multidistrict litigation, specifically in the Class Action 2:12-cv-970.

Respectfully submitted,

*/s/ Joel Waltzer*
Joel Waltzer
Clay Garside
WALTZER WIYGUL & GARSIDE, LLC
3715 Westbank Expressway, Ste 13
Harvey, LA 70058
(504) 340-6300

*Attorney of Record for Movant -*
*Appellant Gulf Organized Fisheries*
*In Solidarity & Hope, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Original Brief was filed electronically on February 20, 2013, and will, therefore, be served electronically upon all counsel through the Clerk's Notice of Docket Activity. No party requires alternative service.

*/s/ Joel Waltzer*
Joel Waltzer
WALTZER WIYGUL & GARSIDE, LLC
3715 Westbank Expressway, Ste 13
Harvey, LA  70058
(504) 340-6300

*Attorney of Record for Movant -*
*Appellant Gulf Organized Fisheries*
*In Solidarity & Hope, Inc.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 8,045 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14 point font.

/s/ Joel Waltzer
Joel Waltzer
WALTZER WIYGUL & GARSIDE, LLC
3715 Westbank Expressway, Ste 13
Harvey, LA  70058
(504) 340-6300

*Attorney of Record for Movant - Appellant Gulf Organized Fisheries In Solidarity & Hope, Inc.*

February 20, 2013